### NOBLE v. C. CRANE & CO.

(Circuit Court of Appeals, Sixth Circuit. April 15, 1909.)

No. 1,900.

1. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD —IMPROPER MATERIALS.

   Plaintiff, an experienced carpenter, was injured by the collapse of a temporary scaffold constructed by plaintiff and fellow carpenters in the erection of a sawmill in defendant's lumber yards. The scaffold was constructed according to the directions of defendant's foreman out of certain hemlock pieces lying on the third floor of the building. Plaintiff did not construct the part of the scaffold that broke, and had no knowledge of its defective condition. While the carpenters were directed to use the material designated, there was other material in the yards that could have been secured by merely requesting the foreman to furnish it in case any of that designated was found unsuitable. *Held*, that the foreman's directions only amounted to an order to use such part of the material as was suitable and was nearest at hand, and that defendant was not negligent.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. TRIAL (§ 165*)—DIRECTION OF VERDICT.

   It is the duty of the judge, on a motion to direct a verdict, to take that view of the evidence most favorable to the party against whom it is moved, and from such inferences, reasonably and justifiably to be drawn therefrom, determine whether or not a verdict might not be found for the party having the burden of proof, and, if not, he should direct the verdict against such party.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 402; Dec. Dig. § 165.*]

3. TRIAL (§ 143*)—DIRECTION OF VERDICT—CONFLICTING EVIDENCE.

   A mere dogmatic assertion, which does not appeal to the reason of the court nor have substance and relevant consequence, is not sufficient to con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stitute a conflict of evidence which will prevent the direction of a verdict, but a conflict of evidence, to have such effect, must be positive and real.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

4. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD —EMPLOYER'S LIABILITY ACT.

Rev. St. Ohio 1908, §§ 4238–18, 4238–19, 4238–0, 4238–01, do not create a liability on the part of a master for injuries sustained by a servant resulting from defective scaffolding, where there is no evidence of the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 116.*]

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Edward Colston, for plaintiff in error.

Chas. H. Stephens and Chas. H. Stephens, Jr., for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

TAYLER, District Judge. This action was prosecuted in the court below by the plaintiff in error to recover from C. Crane & Co., a corporation, the damages sustained by him in consequence of the breaking of a scaffold on which he was working, which resulted in his falling some 40 feet to the ground, whereby his leg was broken and other injuries were received. At the close of the plaintiff's testimony, the court, on the motion of the defendant, directed a verdict for the defendant. Error is prosecuted to the judgment which was entered on the verdict.

The plaintiff was a carpenter of seven or eight years' experience, and was employed with other carpenters in the work of erecting a new sawmill in the extensive lumber yards of the defendant in the city of Cincinnati. After the frame of the mill had been completed, it became necessary, in the prosecution of the work, to cover the roof with tar paper. This work was done by the carpenters. To enable them to put the tar paper along the edge of the roof, a temporary scaffold was built by the plaintiff and the three other carpenters associated with him in the work of erecting the building. The scaffolding, some 55 feet long, consisted of planks supported by five brackets or outriggers composed of 2x6 hemlock pieces, 8 or 10 feet long, projecting about 5 feet from the side of the building. These 2x6 outriggers were securely nailed to the upright 12x12 timbers, which constituted the framework of the mill. While the plaintiff and two other carpenters were standing on the scaffolding, nailing tar paper to the edge of the roof, one of these 2x6 hemlock supports, because of a defect in it, broke close to the building, and the scaffold gave way, with the result already stated.

Plaintiff himself put up two of the five supports, but had nothing to do with putting in that which was defective, and knew nothing of its defective condition.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The liability of the employer depends upon the manner in which it performed its duty to furnish to the plaintiff and his fellow workers on the scaffold suitable and safe materials with which to erect the scaffold. Other questions appear in the pleadings, but not in the proof. The plaintiff in error contends that the defendant did not perform this duty, either as defined by the common law or by the statutes of Ohio.

The testimony developed this situation. The defective support or outrigger was one of several pieces of 2x6 hemlock which were lying on the third-story floor of the building which was being constructed. Similar scaffolds were erected on opposite sides of the building. These pieces had been left over from supplies brought up from the yard from time to time for the general purposes of constructing the building. Just how many pieces there were when the time came for building the scaffold does not appear, but in view of the testimony and the motion for a verdict it must be assumed that there were no more than were necessary to build the scaffold.

One of the witnesses, Sesher, testifies that McMullin, the foreman, told him to take the 2x6 hemlock pieces that were lying on the third-story floor and build the scaffold out of it. This instruction Sesher conveyed to the plaintiff and to the other carpenters engaged in the work. The same witness testified that if at any time he wanted additional material he would go and tell McMullin and the latter would have it there, and that he did not know of any carpenters with him who had any authority to go out into the yard and get material without orders from McMullin. Noble, the plaintiff, testified that he had no authority to go out into the yard or into the mill to select lumber for the scaffold.

The testimony of the plaintiff and of his other witnesses shows very clearly what was the custom in this lumber yard respecting the ability and opportunity of workmen to obtain needed lumber. Plaintiff says that he knew of nothing to prevent the carpenters from asking to have more lumber brought up, and that there were laborers whose business it was to bring it up as the carpenters needed it. Practically all of the plaintiff's witnesses testified that it was easy for the carpenters to get any lumber they wanted; all that was needed was to ask for it. One of the laborers or helpers testified that he was ready to bring up any amount of lumber, including 2x6 hemlock pieces, that was needed; that that was what he was there for, and if it was not there he was to go and get it. All they had to do, he said, was to call for it, and they got it. To the same general effect is the testimony of other witnesses. There is no contradiction except such as may be inferred from the testimony already referred to, and that is in no proper sense contradiction.

These references put the plaintiff's case in its strongest possible form, and allow every reasonable inference in his favor to be drawn from them.

It is claimed by plaintiff's counsel that this instruction of McMullin, coupled with what the plaintiff says as to his authority to go out and get additional lumber, limited the workmen to the use of the material referred to by the foreman, and that they were bound to use it, whether it was safe and suitable or not. More definitely interpreted, the

claim means this: That the foreman intended, and so directed, that these three or four carpenters, skilled in the work of building and using scaffolds, with knowledge of the kind of material needed for and suited to such construction, and skilled judges of the quality and strength of lumber, should build a scaffold, on which they themselves were to work, out of a limited and certain pile of lumber, and that they could not have any other lumber out of which to build it if it should appear, when about to be used, to be insufficient or unfit for such purpose.

Such an interpretation of such an instruction, which we must assume to have been given exactly as Sesher tells it, seems to us to be forced and unreasonable. There is no real or substantial conflict anywhere in the testimony. We are required, if we sustain plaintiff's contention, to come to the strained and unnatural conclusion that, in spite of this testimony offered by the plaintiff, these intelligent carpenters, building their own scaffold, were helpless to select or to send for other material than that pointed out by the foreman. We are compelled, if we give weight to the contention of plaintiff, to declare that under the circumstances narrated by plaintiff's testimony, involving, as we have said, no contradiction, no reasonable opportunity was furnished to these workmen to obtain suitable material out of which to construct a scaffold.

Counsel for plaintiff in error formulate their claim upon these facts as follows:

"Defendant cannot escape liability by claiming, as it does, that the direction to use this material given by it to these men was qualified. Defendant cannot maintain that these men should have understood that if the material they were thus directed to use should turn out, on examination by them, to be unfit, they should discard it and demand other material. The direction to use this material was not thus limited, and, had it been so limited, that would not relieve the defendant of liability, because such direction would have imposed upon these men the duty and responsibility of inspecting the lumber and of exercising judgment as to its fitness. That duty was one resting upon the master, and he could not delegate it."

This argument would appeal to us with more force if the persons to whom this so-called direction was given were not carpenters; if the scaffold had not been for their own use; if they were persons innocent of any knowledge of the quality or kind of material needed for such work; if they had been at work at a place remote from any supply of suitable material, instead of in the midst of a lumber yard of vast dimensions, with an unlimited amount of proper material available and men at hand to bring it to them.

The so-called direction to such men under such circumstances was no more than a direction to use such available and suitable material as was nearest at hand, with perfect freedom, according to the custom existing and according to the natural and necessary conditions and apparent opportunities, to go or send into the yard for any other pieces which might be needed. Indeed, the situation would not be wanting in analogy if the foreman had directed these carpenters to make use of a keg of nails on the third floor, and it happened that there was an insufficient quantity of nails of suitable quality with which to build the scaffold, and in consequence of the scaffold being insecurely nailed it broke and injury resulted to the men who built it.

When we analyze the testimony given by plaintiff's witnesses, we find no real conflict in it.

Under these circumstances, what was the duty of the trial court? In the case of McGuire v. Blount, 199 U. S. 142 (26 Sup. Ct. 1, 50 L. Ed. 125) the court says, at pages 147, 148:

"It is strenuously urged that, whatever the merits of the controversy, there was sufficient proof to require the trial court to submit the case to a jury; but no rule is better established in this court than that which permits a presiding judge to direct a verdict in favor of one of the parties when the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different verdict. It is clear that, where a court would be bound to set aside a verdict for want of testimony to support it, it may direct a finding in the first instance, and not await the enforcement of its view by granting a new trial."

We hold that in this case "all the inferences which the jury could justifiably draw" from the testimony would be insufficient to support a verdict for the plaintiff.

The leading cases on this question were cited and commented upon by Judge Lurton in the case of Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 Fed. 463, 20 C. C. A. 596. After an elaborate discussion and criticism of authorities, this rule is laid down at page 477 of 74 Fed., at page 610 of 20 C. C. A.: That it is the duty of the judge, on a motion to direct a verdict—

"to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus. If not, he should, upon the ground that the evidence is insufficient in law, direct a verdict against that party."

And again, on the same page, occurs the following:

"Whenever there is evidence of so positive and significant a character as, if uncontradicted, would support a verdict, it is the duty of the court to submit the case to the jury, under proper instructions."

The rule thus laid down in these two quotations was explicitly approved in the case of Insurance Co. v. Randolph, 78 Fed. 754, 24 C. C. A. 305, where the opinion was written by Mr. Justice Harlan, sitting as a member of this court.

In the case of Minahan v. Grand Trunk Western Ry. Co., 138 Fed. 37, 70 C. C. A. 463, is another extended discussion by Judge Severens of the same subject. The court, after having declared that the trial court ought not to direct a verdict "where there is positive conflict in the evidence upon an issue material to the controversy," continues:

"And by 'evidence' we mean something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of 'proof' or having fitness to induce conviction."

So that it is the duty of the court to direct a verdict unless the conflict is positive. The conflict must be real, not merely apparent. A mere dogmatic assertion, which does not appeal to the reason of the court, which does not have substance and relevant consequence, which does not have fitness to induce conviction, is not proof, even

if uncontradicted, and does not interfere with the duty of the court to direct a verdict.

The claim is also made on behalf of the plaintiff that the defendant is liable for this injury by reason of the provisions of the statutes of Ohio (Rev. St. 1908) sections 4238–18, 4238–19, 4238–0, 4238–01, which we here quote as follows:

"(4238–18). Section 1. (Scaffolding and apparatus to be kept safe for employés). A person or corporation employing or directing another to do or perform any labor in the erection, repairing, altering, or painting any house, building or structure within this state, who shall knowingly or negligently furnish or erect or cause to be furnished for erection for and in the performance of said labor, such unsuitable or improper scaffolding, hoists, stays, ladders or other mechanical contrivances as will not give proper protection to the life and limb of any person so (employed or) engaged, or if any such scaffolding or staging swung or suspended from an overhead support or supports shall be more than twenty feet from the ground or floor, the same shall be deemed unsuitable and improper and as not giving proper protection to the life and limb of any person employed or engaged thereon, unless such scaffolding or staging shall, when the same is in use, have a safety-rail rising at least thirty-four inches above the floor or main portion of such scaffolding or staging, and extending along the outside thereof, and properly attached thereto, and unless such scaffolding or staging shall be provided with braces so as to sustain the weight of a man's body leaning against it, and prevent the scaffold or staging from swaying from the building or structure (89 v. 380).

"(4238–19). Sec. 2. (Penalty.) That any person or corporation by any of its officers who shall violate any of the provisions of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not to exceed three months, or both, at the discretion of the court. (89 v. 380.)

"(4238–0). Section 1. (Employers' liability for personal injury to employé notwithstanding negligence of fellow-servant). An employer shall be responsible in damages for personal injury caused to an employé, who is himself in the exercise of due care and diligence at the time, by reason of any defect in the condition of the machinery or appliances connected with or used in the business of the employer, which arose from, or had not been discovered or remedied owing to the negligence of the employer, or of any person in the service of the employer, entrusted by him with the duty of inspection, repair, or of seeing that the machinery or appliances were in proper condition. (95 v. 114, April 4, 1902.)

"(4238–01). Section 1. (Act qualifying the risks to be deemed as assumed by employés.) In any action brought by an employé, or his legal representative, against his employer, to recover for personal injuries, when it shall appear that the injury was caused in whole or in part by the negligent omission of such employer to guard or protect his machinery or appliances, or the premises or place where said employé was employed, in the manner required by any penal statute of the state or United States in force at the date of the passage of this act, the fact that such employé continued in said employment with knowledge of such omission, shall not operate as a defense; and in such action, if the jury find for the plaintiff, it may award such damages not exceeding, for injuries resulting in death, the sum of five thousand dollars, and for injuries not so resulting, the sum of three thousand dollars, as it may find proportioned to the pecuniary damages resulting from said injuries; but nothing herein shall affect the provisions of section 6135 of the Revised Statutes.

"Nothing herein contained shall be construed as affecting the defense of contributory negligence; nor the admission of evidence competent to support such defense. (97 v. 547.)"

We have already held that no negligence on the part of the master was proved in this case, and there is no substantial evidence from which any such fact could be fairly or reasonably inferred. The fundamental condition of the application of all these sections is the negli-

gence of the master. Since that did not exist, the statutes are inapplicable. An appreciation of this fact prevents the misconception that there is any analogy between this case and the cases of Chambers v. American Tin Plate Co., 129 Fed. 564, 64 C. C. A. 129, Henry J. Spieker Co. v. Ferguson, 15 O. C. D. 671, and other cases to the same effect cited by counsel for plaintiff in error.

It results, therefore, that the judgment of the Circuit Court will be affirmed.