### MIDDLETON v. P. SANFORD ROSS, Inc.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1914.)

No. 2486.

1. MASTER AND SERVANT (§ 88*)—RELATION OF PARTIES—SERVANT OF INDEPENDENT CONTRACTOR.

Where defendant had employed R. & Sons to install an engine on a dredge defendant was reconstructing, a servant of R. & Sons, who was injured while on defendant's premises just prior to the commencement of the installation of the engine by the negligence of defendant's servants, could not be regarded as a servant of defendant, but would be held to have been on the premises as an invitee to whom defendant owed a duty of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 119, 120; Dec. Dig. § 88.*

Who are independent contractors, see note to Atlantic Transport Co. v. Coneys, 28 C. C. A. 392.]

2. NEGLIGENCE (§ 32*)—DANGEROUS PREMISES—INVITATION OF OWNER.

An invitation of the owner or occupant of premises is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

3. NEGLIGENCE (§ 32*)—DANGEROUS PREMISES—INJURY TO INVITEE—SERVANTS OF INDEPENDENT CONTRACTOR.

The rule that the owner or occupant of premises is bound to exercise reasonable care to keep the premises in safe condition so as not to injure invitees is applicable to servants of independent contractors.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

In Error to the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Action by Mrs. Annie Middleton against P. Sanford Ross, Incorporated. Judgment (202 Fed. 799) for defendant, and plaintiff brings error. Reversed.

The material allegations of the first count of the petition are as follows:

That P. Sanford Ross, Incorporated, is a New Jersey corporation, having an agent, office, and place of business in Chatham county, Ga.; that the petitioner is the widow of Edwin Middleton, of Chatham county, Ga., lately deceased, and claims damages from the said P. Sanford Ross, Incorporated (hereinafter called the defendant), by reason of the homicide of her husband, in the sum of $25,000; that the said defendant is engaged in the business of owning and operating dredges and other boats, and at the times hereinafter named was engaged in said business. Defendant, on the 22d day of March, 1912, was engaged in rebuilding one of its dredge boats which had been dam-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

aged by fire, said dredge being rebuilt at a wharf in Savannah river in said county and state, near the foot of Barnard street, and the work thereon being done by and under the supervision of the defendant company.

Messrs. John Rourke & Sons, a firm of machinists, had been employed by the defendant to install an engine in said dredge boat. Petitioner's husband was in the employ of said John Rourke & Sons in the capacity of foreman, and was to have superintended the installation of said engine in said dredge after same was placed in position, coupling and installing said engine and adjusting its necessary parts. The wooden deck of said dredge was being erected and the necessary space left thereon in the forward portion thereof for the installation of said engine in the "hold" of the dredge. Said engine had been placed upon temporary beams, it being intended to take out said temporary beams and permanently install said engine on its bed. In order to "house" over said dredge and to complete the upper structure thereof, upright posts were installed by defendant along the side of said dredge on its deck at intervals of about 20 feet apart. These uprights are about 20 feet in length. The deck of said dredge is about 30 feet wide. Crosswise of said dredge, and extending from the upright posts on each side thereof, are laid crossbeams or timbers, intended to be securely fastened, and thus making the framework of the upper portion of said dredge. The framework is known as the "hog frame." Two of said upright posts, at the time hereinbefore stated were erected about 20 feet aft of the place where said engines were being installed. A crossbeam about 30 feet in length and about 12x12 in size, had been placed on the top of said uprights, extending crosswise of the deck. This was intended to be permanently placed and bolted. On the wharf was located a steam-hoisting engine with derrick and fall attached, the derrick boom being movable and swinging over the dredge.

E. D. Van Winkle was the superintendent of the defendant in charge of the work of reconstructing said dredge, and was its alter ego at the time and place herein referred to. During the course of said work and on the date aforesaid, it became necessary to remove a stick of timber upon which the engine was resting. This timber was about 14 inches by 14 inches and 25 feet in length. In order to accomplish this, a wire cable was run from said derrick boom and fastened around the timber underneath said engine. Said cable was not fastened in the middle underneath said engine. Said cable was not fastened in the middle of said timber. It was not cross-tied nor balanced. The result was that when said timber was hauled by said cable and brought above the deck, one end sagged down and the lighter end thereof was projected upward. Some of the employés of the defendant caught hold of the lighter end of said stick of timber while it was being moved. As the timber was being hauled upward it got beyond the control of said men who were holding the lighter end thereof, and the heavy end sagged downward, jerking the other end from the control of said men. As said stick of timber thus jerked loose, it struck the crossbeam above described, resting on the two upright posts of the "hog frame," and knocked the same from its position, throwing it down upon the deck of said dredge with great force and violence.

Petitioner's husband was not engaged in the work of moving said stick of timber, nor did his duties require that he should take any part therein, and none of the employés of John Rourke & Sons was engaged in such work, the same being done entirely by the defendant, its servants and employés. When the work of removing said timber commenced, petitioner's husband had walked aft of the place where said work was being performed, and was standing at the side of the dredge, about 15 or 20 feet away, in what was apparently a safe place. The place where petitioner's husband stood was a safe distance away from said work and not in the course of line of work. It was on the wharf or starboard side of said vessel, by the upright posts of said "hog frame." Petitioner's husband had nothing to do with the construction or placing of said crossbeams, or in the removal of said beam from beneath the engine. While petitioner's husband was thus standing in a place of apparent safety, without warning of any kind, the crossbeam, which should have been securely fastened and bolted in position, was struck by the stick of timber being raised out of said hole of said dredge, as described in the preceding

paragraph, and fell with great force and violence, striking petitioner's husband upon the head and inflicting injuries from which he died within a short time.

At the time said injuries were received by petitioner's husband, he was in a place where he had a right to be. He did not contribute or consent to the said injuries, and could not, by the exercise of ordinary care, have avoided the same. Defendant knew of the unsafe and insecure position of said crossbeam; by the exercise of ordinary care it could have so known.

Defendant was negligent at the time and place aforesaid:

(a) In failing to provide a safe place to work in and aboard said dredge, and at the place where petitioner's husband was killed.

(b) In failing to securely fasten both ends of said crossbeam resting upon said uprights, as it should have done prior to the removal of said timber.

(c) In failing to warn petitioner's husband of the failure on its part to securely fasten and bolt the said ends of said crossbeams resting on the upright posts, and of its unsafe and insecure position.

(d) In allowing said crossbeams to lie on the top of said upright posts without fastening or support of any kind whatever so as to give notice or warning of its unsafe position and condition.

(e) In negligently and carelessly removing said stick of timber from beneath said engine bed.

(f) In failing to exercise proper care in the removal of said stick of timber by fastening said steel cable in the middle of said timber and thus equalizing its weight.

(g) In failing to cross-tie or otherwise securely fasten said cable around said stick of timber so as to prevent the slipping thereof.

(h) In failing to properly provide a safe means of removal of said stick of timber from beneath said engine bed.

(i) In failing to provide a safe method of controlling the weight of said stick of timber after it was brought above the deck of said dredge, and in failing to adopt proper precautions to prevent its striking said crossbeam.

(j) In negligently and carelessly allowing said stick of timber to strike said crossbeam.

By reason of the killing of petitioner's husband through the carelessness and negligence of the defendant, she has been damaged in the sum of $25,000. Whereupon your petitioner prays that she may have judgment against said defendant for said sum of $25,000.

The second count of the petition is substantially the same as the first count, except that it is averred, as the proximate cause of the injury, that the defendant had negligently placed a guy rope of the derrick beneath the crossbeam, so that when the timber was raised, the guy rope became taut and knocked the crossbeam down, causing the death of petitioner's husband.

The defendant filed a general demurrer, that "the petition has not set forth any legal cause of action against this defendant." The court below sustained the demurrer.

Wm. W. Osborne, Alexander A. Lawrence, and Edmund H. Abrahams, all of Savannah, Ga., for plaintiff in error.

William Garrard, of Savannah, Ga. (Garrard & Gazan, of Savannah, Ga., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

SHELBY, Circuit Judge (after stating the facts as above). This is an action under section 4424 of the Georgia Code, brought by Mrs. Annie Middleton, a citizen of Georgia, against P. Sanford Ross, Incorporated, a New Jersey corporation, for damages for negligently causing the death of Edwin Middleton, her husband. The court below sus-

tained a general demurrer to the petition (202 Fed. 799), and that ruling is assigned as error.

The decisions cited by the trial court (Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, and Kreigh v. Westinghouse, Church, Kerr & Co., 152 Fed. 120, 81 C. C. A. 338, 11 L. R. A. [N. S.] 684), are suits by a servant against his master for injuries caused by the alleged negligence of the master—cases which deal with rules applicable to the relation of master and servant. The instant case is not one that involves the relation of master and servant; that is, the relation of master and servant did not exist between the defendant corporation and the plaintiff's deceased husband. If it appears that Middleton, the decedent, was not on the premises as the servant of the defendant, and, in fact, was not the servant of the defendant—that the relation of master and servant did not exist between them—it becomes obvious that the authorities relied on to sustain the decision below are not controlling.

[1] It is alleged in the petition that the defendant corporation is engaged in the business of owning and operating dredges and other boats; that on March 22, 1912, it was engaged at a wharf in Savannah river in rebuilding one of its dredge boats that had been damaged by fire; that E. D. Van Winkle was the superintendent of the defendant in charge of the work, and "was its alter ego at the time and place herein referred to." John Rourke & Sons, a firm of machinists, were employed by the defendant to install an engine on the dredge boat. Edwin Middleton, plaintiff's deceased husband, was in the employment of John Rourke & Sons as their foreman, and was to have superintended the installation of the engine in the dredge after it was placed in position. He was not engaged in the work at the time of the accident, and none of the employés of John Rourke & Sons was then engaged in such work. The work out of which the accident occurred "was being done entirely by the defendant corporation, its servants and employés." So it is affirmatively alleged that Middleton, who was killed, was not in the employment of the defendant, but that he was in the employment of John Rourke & Sons; that is, he was the servant of John Rourke & Sons, independent contractors employed to do a specific piece of work; and the servant of such independent contractors was not the servant of the defendant. 1 Labatt's Master & Servant (2d Ed.) § 34; Otis Steel Co. v. Wingle, 152 Fed. 914, 82 C. C. A. 62. It also appears that the time had not arrived for John Rourke & Sons to begin their work of the installation of the engine. The defendant was, by moving timbers and machinery, getting the dredge ready for the engine to be installed; and, when it was ready, John Rourke & Sons, acting by their servant and foreman, Middleton, were to begin their work of installation. The decedent was undoubtedly on the premises lawfully —he was there to begin the work of installation of the engine when the defendant was ready for him to begin. Clearly the plaintiff's right of action cannot be defeated on the theory that her husband was the servant of the defendant, and that therefore those in charge of the dredge and engaged in the work, and guilty of the alleged negligence, were his fellow servants. Middleton, the decedent, was the servant

·of an independent contractor, and not the servant of the defendant, the employer of the independent contractor. And he was on the premises, if not by express, certainly by implied, invitation, for he was there to install the engine when the dredge was ready for that work to be done.

The acts of negligence charged are the acts of persons employed and acting for the defendant corporation. Middleton, the decedent, was not participating in the work of getting the dredge ready for the installation of the engine, nor were his employers, John Rourke & Sons. Middleton, the decedent, was a stranger to the work then being done. His death, it is charged, was caused by the negligence of the defendant's servants.

"One who employs a servant to do his work is answerable to strangers for the negligent acts or omissions of the servant committed in the course of the service."

This rule, though modern, is now elementary. Standard Oil Co. v. Anderson, 212 U. S. 215, 220, 29 Sup. Ct. 252, 53 L. Ed. 480.

[2, 3] If the averments are not sufficient to· show that Middleton, the decedent, was employed to be on the premises, they are certainly sufficient to show that he was there by invitation. Invitation of the owner or occupant is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty. Shearman & Redfield on Negligence (1913 Ed.) § 706; 1 Thompson on Negligence, §§ 968-972; West India & P. S. S. Co. v. Weibel, 113 Fed. 169, 51 C. C. A. 116. And the owner or person in possession of the premises owes it as a duty to those who come on the premises by invitation, express or implied, to exercise reasonable or ordinary care to keep and maintain his premises in safe condition. Indermaur v. Dames, 1 L. R., C. P. 274; Huey v. Atlanta, 8 Ga. App. 597, 70 S. E. 71; Butler v. Lewman, 115 Ga. 752, 758, 42 S. E. 98; The Montrose (D. C.) 179 Fed. 1000; Pioneer S. S. Co. v. McCann, 170 Fed. 873, 96 C. C. A. 49. And he owes such duty to independent contractors and their servants. 1 Thompson on Negligence, § 979.

We cannot, of course, foresee how the case may appear from the facts upon a trial on the merits, but we are of the opinion that the · petition is not subject to a general demurrer.

Reversed.