AMERICAN BOX & LUMBER COMPANY, a corporation, *Plaintiff in Error*, v. WARREN F. CHANDLER, *Defendant in Error*.

138 So. 29.

Division A.

Opinion filed September 10, 1931.

*Marks, Marks & Holt,* for Plaintiff in Error;
*Evan Evans,* for Defendant in Error.

ELLIS, J.—Warren F. Chandler, a carpenter, was at work on the construction of a two-story wooden building being erected for the American Box & Lumber Company in Jacksonville on April 15, 1927. Chandler was at work on a scaffold erected on the west side of the building when one of the ledger boards of the scaffold broke causing the floor boards of the scaffold to give way and Chandler fell to the ground sustaining some injuries.

At the time, four men were on the scaffold: Mr. Eddy, Mr. McDowell, Mr. McNamara and the plaintiff, Mr. Chandler. They were standing very near to each other, two on one side of the ledger board that broke and two upon the other side. The scaffold was built by McDowell and McNamara the day before from the supply of material on the ground usually used for such purposes. There was a sufficient supply of suitable material for that purpose. Mr. Drygas was foreman or general superintendent of the job. Mr. McDowell was job superintendent under Mr. Drygas, who was on the job when the accident occurred.

The scaffold consisted of four upright pieces of 2x4 about eighteen feet long fastened in the usual way to the house with ledger boards about seven-eights by six and cross braced with boards of the same size. On the ledger boards pieces of 2x8 or 2x10 were laid for floor boards. There was no evidence that there was any insecure nailing of boards.

There is a controversy about the ledger board that broke causing the accident, whether it was defective or not. It is claimed that the defect in the particular ledger board consisted in the material which it is claimed was a piece of No. 2 short grained pine with a knot hole in it' at a point about half way between the house to which one end was nailed and the 2x4 upright at which the other end was nailed. The uprights stood about four or five

feet from the house and were about ten or twelve feet apart.

The evidence as to what happened to the scaffold when the ledger board broke is not clear. Mr. Chandler fell to the ground. The other three on the scaffold with him at the time seem not to have fallen although they were standing near to each other. Nor is there any evidence as to which ledger board broke. McDowell said that he and Chandler were standing about the middle part of the scaffold while McNamara and Eddy were at one end. McDowell saw Chandler "fall to the ground from the scaffold" and at another place in his testimony he said: "There were four of us on it when it fell". Chandler said he "fell with it". Mr. Eddy said he was on the scaffold "when it fell". Drygas said he was superintendent when Chandler "was hurt with a falling scaffold". Whether the entire structure fell, or only a part of it; whether the floor boards only dropped at that particular ledger board support and Chandler lost his balance and fell or whether the entire structure collapsed precipitating all four workmen who were upon it to the ground is not made clear by the evidence.

Within a month after the accident Chandler brought his action in the Circuit Court for Duval County against the American Box & Lumber Company for damages for personal injuries. The declaration alleges that a scaffold "which was then and there furnished and provided by defendant for the said use of the plaintiff" "gave way and fell". The principle invoked as a basis for recovery is that a reasonably safe place must be provided by an employer at which his employees are required to work. The breach alleged was that the scaffold "furnished and provided by defendant as aforesaid, was defective, insufficient, weak and unfit for use" by reason whereof the scaffold "collapsed and fell as aforesaid".

The defendant sought by motion to require the plaintiff

to amend his declaration by alleging with "particularity and in detail wherein the scaffold mentioned was defective, insufficient, weak and unfit for use". The motion was denied and that order constitutes the ground for the first assignment of error by the defendant against whom a verdict was rendered for eleven thousand dollars damages and judgment entered for seven thousand five hundred dollars and who seeks a reversal on writ of error. A remittitur of three thousand five hundred dollars was suggested by the trial court and acted upon by the plaintiff. The defendant also interposed a demurrer to the declaration. The demurrer was overruled and that order constitutes the basis of the second assignment of error. The grounds of the demurrer were that the declaration states no cause of action, is vague, indefinite, uncertain in its terms, is argumentative and consists of allegations of mere legal conclusions. Also that there is no sufficient allegation of a breach of duty which the defendant owed to the plaintiff nor does it contain any sufficient allegations of actionable negligence on the defendant's part.

The orders upon the motion and demurrer were erroneous and prejudicial to the defendant's rights. In considering this question the point is at once presented whether it is the duty of an employer who engages carpenters to erect a building to provide his workmen with scaffolds or temporary places to work as a completed and reasonably safe and sufficient footing upon which to stand and sufficient in strength to sustain all materials that might be placed upon it by the workmen and all workmen who may climb upon and stand upon it, or merely to supply suitable material with which the workmen themselves may construct the scaffold using their judgment as to the quantity and sufficiency of the materials to be used and the efficiency of the workmanship in constructing the temporary structure.

If the alternative is the legal principle applicable the declaration as drafted is clearly insufficient in not alleging that the materials for the building of the scaffold were unsuitable for such a structure, the negligence consisting in failing to supply such material. An action for damages for personal injuries rests upon the proposition that the defendant owed the plaintiff some legal duty express or implied which the defendant has breached, duty arising in favor of the plaintiff from some relation or privity between them.

The liability in favor of the injured party arises when by act of commission or omission on the part of the defendant the duty is ignored. See Woodbury v. Tampa Water Works Company, 57 Fla. 249, 49 South. Rep. 556, 21 L. R. A. (N. S.) 1034.

The act of commission or omission must result in depriving the injured party of an existing legal right. 38 Cyc. 420.

These principles are elementary and the requirements of good pleading therefore are that the declaration or statement of the cause of action should allege a duty which the defendant owed to the plaintiff or state some facts from which the law implies the duty and should allege a breach or negligent omission to perform that duty although it is not necessary to set out in detail the specific acts constituting the negligence of which complaint is made. 14 Ency. Pl. & Prac. 331, 333. Accordingly it is sufficient if the declaration specify the act, the commission or omission of which caused the injury and averring generally that it was negligently done or omitted.

This rule is universally followed and has been observed in this jurisdiction for many years. Co-operative Sanitary Baking Co. v. Shields, 71 Fla. 110, 70 South Rep. 934; Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876; Jackson-

ville Electric Co. v. Schmetzer, 53 Fla. 370, 43 South. Rep. 85.

The declaration in this case only by the merest inference alleges the existence of a relation between plaintiff and defendant from which the legal duty of the defendant to provide a completed scaffold for use by the plaintiff could be implied. The language is entirely consistent with the idea that the "scaffold" was a temporary structure and not a permanent place in which the employees were to work and that it was such a temporary place as the workmen themselves constructed from the materials supplied by the employer.

The rule requiring a master to furnish a reasonably safe place to work is usually applied to a permanent or quasi-permanent place and not to structures or instrumentalities of a temporary nature employed by the servants or employees in preparation for or in the progress of their work and except in certain unusual or extraordinary cases the rule does not apply to buildings in process of construction. See Convery v. Stubbs, 267 Pa. 394, 111 Atl. Rep. 251.

The doctrine is clearly expressed by Mr. Justice Gillett speaking for the court in Southern. Indiana R. Co. v. Harrell, 161 Ind. 689, 68 N. E. Rep. 262, 63 L. R. A. 460, as follows: a master is not bound to have "a representative present at every moment to keep the place that appellee (the injured party) might chance to occupy safe, as against the possible negligence of a coemploye" See also 39 C. J. 353; Noble v. C. Crane & Company, 169 Fed. 55.

The construction of a building is in its nature a dangerous employment and is rendered more so as the work progresses and the superstructure rises upon the foundation. Scaffolds and other temporary places in which to work become necessary to be erected as part of the general or main enterprise. Such dangers as are incident to

such work the employee knows and the risk therefrom he assumes, unless the unusual or extraordinary conditions exist which require the employer to personally superintend or direct the building of the temporary place or scaffold. The rule is recognized by this Court in Jacques v. Miami Ice and Cold Storage Co., 73 Fla. 1193, 75 South. Rep. 788.

The language of the declaration in view of the law applicable to the relation of employer and employee engaged in the work of constructing a building is consistent with the idea that the employer or master merely furnished materials for use in scaffold building and had no direction or control of the construction itself So the allegation that the defendant furnished and provided it is merely argumentative, the inference being drawn merely from the existence of the relation of master and servant.

One who is brought into court to answer another's claim whether it arises in tort or from contract is entitled under the law to be specifically and clearly informed of the nature of the cause against him In this case the declaration should have alleged specifically that under the terms of the agreement under which the relation was created it became the duty of the defendant to furnish the particular scaffold for use by his employees if such was the basis of the plaintiff's claim, or that it was the defendant's duty under the agreement between him and his employees to furnish suitable material out of which such structures were to be erected by the employees as the work progressed and then pointed out or alleged the particular omission of duty followed by the allegation that such omission was negligent. Otherwise the defendant, as was the case here, was embarrassed in the trial not knowing whether it was defective workmanship or defective materials which caused the structure to collapse.

For the error pointed out the judgment is reversed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.

. DAVIS, J. (Concurring) : In this case the scaffold was not shown to have been an instrumentality which was prepared and furnished by the master for the work in which the injured workmen were engaged. The furnishing and preparation of proper scaffolds may be, and often is, itself a part of the work which carpenters are employed to perform, especially in connection with the construction of small buildings. It appears to be so in this case, therefore, the master was not shown to be liable for the defect precipitating the injury.

But in those cases where the furnishing and building of scaffolds is not itself a part of the work which the workmen are employed to perform, but such scaffolds are instrumentalities prepared and furnished *by the master* and it is shown that the workmen injured by collapse of same were without control or responsibility, in regard thereto, I think it is clear that the master would be liable for any defects, even under the views which have been expressed in the able opinion prepared by Mr. Justice Ellis in which I concur with the supplementary observations above set forth. See Fraser v. Red River Lumber Co., 45 Minn. 235, 47 N. W. 785.