## KUPTZ et al. v. RALPH SOLLITT & SONS CONST. CO.

### No. 8143.

Circuit Court of Appeals, Fifth Circuit.
Feb. 24, 1937.

Rehearing Denied March 27, 1937.

SIBLEY, Circuit Judge, dissenting.

———◆———

C. J. Shaeffer and W. B. Handley, both of Dallas, Tex., for appellants.

Allen Wight, of Dallas, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

This action to recover for personal injuries alleged to be the result of the defendant's negligence was instituted by John J. Kuptz and Employers' Liability Assurance Corporation, as plaintiffs, against Ralph Sollitt & Sons Construction Company.

Defendant-appellee was general contractor for the construction of a new post office building in Tyler, Tex. David Gray was subcontractor for the erection of wooden concrete forms, and Meyer Light Company for electrical work. Both were "independent subcontractors."

Plaintiff Kuptz was employed by the electrical subcontractor as foreman, and had other men working under him. The general contractor, through its superintendent, exercised general supervision and control over the progress of the work, coordinating the various subcontractors, and directing them when to commence their work.

The building was of reinforced concrete construction, necessitating the erection of wooden forms or troughs around the horizontal steel beams in the flat area of the roof, in which forms concrete was to be poured to incase the beams. The forms were mere temporary work, to be removed as soon as the concrete hardened. The forms consisted of a bottom board, nailed to upright side boards, the top being left open to receive the concrete. These forms, erected by workmen under subcontractor David Gray, derived no support from the steel roof beams, but were held in place by wooden braces placed beneath them and resting on the floor below. It was customary, and probably known to the general contractor, that the subcontractors' workmen would walk and stand on these forms in performing their tasks. It was the duty of the electricians to install metal conduits for wiring through the wooden forms on the roof before the concrete was poured, so that after the concrete hardened the system of wiring could be completed through the concrete.

At the time of his injury, Kuptz was on the uncompleted roof of the building for this purpose, having observed that the wooden forms were in place and ready for installation of electrical conduits. The general foreman, an employee of Sollitt & Co., had also told plaintiff the roof was ready for electrical work. Kuptz testified that the general foreman "made some remark that day about the work on the roof being ready, to go ahead and get it done," after which he started to do the work. Kuptz did not inspect the forms to see that they were safe, testifying that such procedure was not customary.

Plaintiff also testified that he would probably have gone ahead with the work, whether he had been directed by the foreman to do so or not.

After working on the roof for several hours, Kuptz stepped on one of the forms which had shortly before been put in place, and which Kuptz testified appeared to him to be the same as other forms, but which in fact was inadequately supported from below and was temporarily incomplete. When Kuptz stepped upon the bottom of the form, it gave way, dropping him some fifty feet to the concrete second floor of the building, inflicting severe and lasting physical injuries. The incomplete and insecure condition of the form was open and patent, not being concealed by any other work, though Kuptz testified that he was unaware of such conditions.

Kuptz charges negligence against the general contractor in failing to inspect the bracing of the wooden forms, and in knowingly permitting him to go upon the roof for the purpose stated without warning him of the insecure condition of the form in question.

Coplaintiff, Employers' Liability Assurance Company, is the insurance carrier of Meyer Light Company under the Texas Workmen's Compensation Laws (Rev.St. Tex.1925, art. 8306 et seq. as amended [Vernon's Ann.Civ.St. art. 8306 et seq.]). It paid Kuptz all compensation and medical expenses required by that law, aggregating nearly $5,000, and claims by subrogation (article 8307, § 6a, Tex.Rev.St. 1925) and by assignment from Kuptz, a recovery against defendant Sollitt & Co. to the extent of the money so paid. Standard Accident Ins. Co. v. Pennsylvania Car Co. (C.C.A.) 49 F.(2d) 73.

At the conclusion of all the evidence, the trial judge directed a verdict for defendant. This appeal is from the consequent judgment.

■ As an employee of the electrical subcontractor, Kuptz was an invitee upon the premises, to whom defendant owed only the duty to use due care, consistent with all the circumstances, to keep the premises in safe condition for plaintiff's use for the purpose for which he was there. Middleton v. P. Sanford Ross (C.C.A.) 213 F. 6; Resnikoff v. Friedman, 124 Minn. 343, 144 N.W. 1095. Defendant owed plaintiff, as a subcontractor's employee, no higher duty than it would owe its own employee, which is to use

reasonable care to furnish him with a reasonably safe place to work and to warn him of any unusual or latent dangers incident to his employment. An experienced employee assumes a risk that is obvious, of common knowledge to those engaged in the occupation, and necessarily incident to the doing of the work, although he does not assume a risk arising from the employer's negligence, of which the employee is not aware. Yates v. Atlantic Ice & Coal Co. (C.C.A.) 76 F.(2d) 86; Missouri Valley, etc., Co. v. Walquist (C.C.A.) 243 F. 120.

■ "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not impose upon him the duty, as towards them, of keeping a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends upon the due performance of that work by them and their fellows." Armour v. Hahn, 111 U.S. 313, 4 S.Ct. 433, 434, 28 L.Ed. 440.

■ Every workman understands that there is more or less danger incident to the erection of a building, and that conditions of safety will change from time to time as the work progresses. He knows, as plaintiff himself testified, that he must exercise reasonable care to discover and avoid dangers incident to the work; excluding, of course, extraneous or concealed dangers, which the exercise of ordinary prudence would not reveal.

Defendant did not undertake to furnish plaintiff with a scaffolding as an instrumentality in performing plaintiff's work, for which reason such cases as Chambers v. American Tin Plate Co. (C.C.A.) 129 F. 561; American Shipbuilding Co. v. Lorenski (C.C.A.) 204 F. 39; Texas Co. v. Strange, 62 Tex.Civ.App. 642, 132 S.W. 370; and Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S.E. 813, 38 A.L.R. 391, in which the employer did undertake to erect or furnish a scaffold, are inapposite here. In Middleton v. P. Sanford Ross (C.C.A.) 213 F. 6, the defendant's employers were guilty of active negligence. In Wilson v. Hibbert (C.C.A.) 194 F. 838, there was evidence that the wall which caused the injury was completed and accepted work which had later become undermined, a latent defect.

■ Defendant did not direct plaintiff as to the method of performing his work, nor is it shown that defendant or its rep-

resentative actually knew of the insecure condition of the form. The charge is that a reasonably prudent inspection would have revealed the danger. If the insecure condition of the form could have been ascertained by a reasonably prudent inspection, plaintiff was as much bound in duty to himself to exercise the prudence of making that inspection as was the defendant, and could have as easily discovered the danger. The nature of plaintiff's employment required him to make such an inspection for himself before going on the forms, as he himself acknowledges in his testimony. Plaintiff being an adult experienced workman, and the danger complained of being open and patent, defendant was under no obligation to exercise for plaintiff's safety any greater degree of care than plaintiff was willing to exercise for his own safety.

█ Defendant did not direct plaintiff to go upon these forms, nor represent that these forms were safe. Defendant's superintendent in effect simply told the plaintiff the roof was ready for electrical work and to proceed with it. This was not a warranty that the forms were safe, nor an implied invitation to enter upon them as a safe place to work. Though it was customary for workmen to walk on these forms, plaintiff could have supported himself upon the steel girders which were in place. Choice of methods was entirely with plaintiff.

██ If plaintiff desired to support himself upon the wooden forms, he did so charged with the duty of exercising due care for his own safety. The insecure condition of the form, a condition as open and patent to the plaintiff as to the defendant, was one of the risks ordinarily incident to construction work. Defendant was not an insurer of plaintiff's safety, nor a warrantor of the safety of the work performed by the carpenter subcontractor's workmen. If there was negligence in leaving the forms insecure, it was that of the independent subcontractor who erected it. As the forms were not a part of a completed structure, but were a mere temporary appliance, and as defendant neither erected the forms, nor held them out to plaintiff as a safe place to go upon, and as the danger complained of was open and patent, actionable negligence upon the part of the defendant is lacking. Armour v. Hahn, supra; Resnikoff v. Friedman, 124 Minn. 343, 144 N.W. 1095; Gulf Transit Co. v. Grande (C.C.A.) 222 F. 817; Galow

v. Chicago, M. & St. P. R. Co. (C.C.A.) 131 F. 242; Jacques v. Miami, etc., Co., 73 Fla. 1193, 75 So. 788; Eldred v. Mackie, 178 Mass. 1, 59 N.E. 673; Southern Indiana R. Co. v. Harrell, 161 Ind. 689, 68 N.E. 262, 266, 63 L.R.A. 460; American Box Co. v. Chandler, 102 Fla. 907, 138 So. 29; Pittsburgh, C., C. & St. L. R. Co. v. Hoffman, 57 Ind.App. 431, 107 N.E. 315; 39 C.J. 545, 855. Note 19 L.R.A.(N.S.) 346. Cf. International Agr. Corp. v. Slappey (C.C.A.) 261 F. 279.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

It was stipulated in the trial that defendant "through its general superintendent in charge of the construction work exercised general supervision and control over all the work, and directed employes and the subcontractors when to pursue their tasks and when to follow other workmen in performing their part of the work which they had contracted to do." This superintendent stands as to the subcontractors as the owner of the premises. Kuptz as a subcontractor was his invitee for business purposes. The law of master and servant has nothing to do with the case. Kuptz was not a fellow-servant with the other subcontractors or workers. Kuptz testified: "Herman (the superintendent) told me that morning the work was ready. He said go ahead and do it. I acted upon that." And again: "Mr. Herman told me that morning they were ready for me on the roof." "I didn't see anybody up there that day at any time working on the wood forms. In doing my work I used the form itself as a place to stand on and do my work. No other place for me to work was provided. * * * The usual scaffold or platform used in doing my work is the form work." "It is customary in building forms for a concrete roof to shore those forms as soon as they are in place. From the top where I was I could not determine that any of the forms were shored or unshored. In working upon construction of the type in this building it is not usual and customary for an electrician or steelworker to go around and inspect forms before he uses them to do his work. I didn't do it in this instance."

If Kuptz had acted on his own initiative and judgment in going on the roof, he must have done his own inspecting or have looked to the form contractor for safety. But here the superintendent told him the work was ready and to go up on the roof.

This meant the forms were complete. By his order, which should not have been given unless they were complete, he assumed responsibility for their completeness. When Kuptz went upon the roof, no one was working on the forms. They appeared complete, and since they covered the whole roof, he could not see beneath them. If complete, since they were to hold up a great weight of concrete, they would safely sustain a man. One of them was an unsupported trap into which Kuptz fell. He was exactly where he had been invited to be, and his inviter could be held guilty of negligence in inviting him there without seeing that the place was safe. Of course Kuptz also must have exercised ordinary care for his own safety, but if there was no duty of precedent inspection on him under the circumstances the jury could find that he did this. I think the defendant's negligence and Kuptz' due care were jury questions.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.