Rebecca Eisenberg and Harry Eisenberg, Respondents, *v.* Irving Kemp, Inc., and Interboro Window Cleaning Co., Appellants.

First Department, April 21, 1939.

*Edward A. Harmon* of counsel [*William E. Lowther*, attorney], for the appellant Irving Kemp, Inc.

*Leo F. Potts* of counsel, for the appellant Interboro Window Cleaning Co.

*Isaac N. Jacobson* of counsel [*Jacobson, O' Neill & Baum*, attorneys], for the respondents.

DORE, J. Plaintiff Rebecca Eisenberg slipped and fell in the lobby adjacent to the elevators on the eleventh floor of a loft building. Defendant Irving Kemp, Inc. (hereinafter called " Kemp ") was lessee of the loft which included practically the entire eleventh floor. Defendant Interboro Window Cleaning Co. (hereinafter called the " cleaning company ") was at the time of the accident engaged in oiling or waxing the lobby floor pursuant to a contract with Kemp. Plaintiffs sued both defendants to recover damages for claimed personal injuries and loss of services; and Kemp served a cross-complaint against its codefendant, the cleaning company, to indemnify it for any damages for which it might be held liable. The court submitted to the jury only the issues between plaintiffs and defendants although counsel for Kemp expressly requested a charge on the cross-complaint against its codefendant.

Against both defendants, plaintiff who fell, has judgment in her favor for $2,181.95; her husband, for $500. Both defendants appeal from the judgment in plaintiffs' favor. Defendant Kemp also appeals from an order granting a motion made after trial for judgment on its cross-complaint against the other defendant provided that defendant cleaning company stipulated that any exception to such decision be directed only to the merits and not the practice adopted and if no such stipulation was filed, denying the motion. Defendants did not so stipulate, the motion was denied, and Kemp appeals.

According to plaintiff's testimony, Mr. Kemp, a manufacturer of blouses, as president of defendant Kemp, had invited plaintiff to come to his place of business the day of the accident to look at his merchandise, stating that he would be there until six or seven o'clock in the evening. On the date and at the time of the accident the floor of the lobby or hallway in front of the elevators was being waxed pursuant to an order given by Kemp the same day, the work to begin about five-thirty P. M.

In the process of waxing or oiling, the floor was first washed with a soap powder; after it dried, a water base liquid wax was then applied to the waxing mop or a few drops poured from the can to the floor and spread with the mop. With regard to the process of waxing the floor, plaintiffs called as their own witness one Jacobson, president of defendant cleaning company, who testified that his company was hired by Kemp to clean and polish the floors once a month; that on the day and time in question his company washed and waxed the lobby; that a space the size of the lobby, viz., forty-five feet long by six or seven feet wide, would probably be done in one operation; that there is no set rule and it would

be in the discretion of the workman as to whether he would do it all at one time or in sections; that when liquid wax is spread on linoleum it is discernible before it dries to a certain extent, it looks a little muddy, a brownish color, but if the linoleum was brown the wax would not be so readily discernible. There was no testimony as to the color of the linoleum. This witness also testified that the newly-applied wax would take possibly twenty minutes to dry and that it is slippery if walked upon before it dries.

Plaintiff Rebecca Eisenberg testified that she arrived on the eleventh floor of the premises on the day in question about half past five or six P. M.; that when she got off the elevator she did not see any one in the lobby and there was no sign or warning of an unusual condition of the floor; that by looking at the floor before she fell she could not tell whether it was wet; that after she left the elevator and had taken " a few steps and turned to the left " toward the entrance to Kemp's showroom, she slipped, fell and hurt her back; that later she observed an oily substance on her clothing. On cross-examination she testified that on the day of the accident there was about a foot of snow on the ground outside; that she had been engaged all day buying, walking through the snow and in and out of buildings; that she wore no rubbers or overshoes; that she imagined her shoes were wet as she was out all day; and that the very night of the accident she left New York for Washington on a sleeper. A witness who claimed to have been with plaintiff and to have seen the accident testified on plaintiff's behalf that the floor at the time was slippery, wet and oily; that there was no warning or sign of any kind but that after plaintiff fell he noticed a man at the extreme front end of the lobby on his knees engaged in waxing the floor with a can and a rag in his hands. He also testified that after plaintiff fell he " ran through the back, being the shortest way, to get some water." A number of persons came out of the showroom after the accident, picked up plaintiff and carried her into a showroom, but nobody else slipped.

Mr. Kemp had died about a year and a half before the trial and his business place had apparently been discontinued. It was, however, stipulated that the cleaning company was engaged in the work of waxing and polishing the linoleum on the floor of the lobby pursuant to a contract between it and Kemp, and that it " performed such work pursuant to instructions or orders given to it by the defendant Irving Kemp, Inc." The cleaning company, however, hired the employee who was doing the work.

The man who waxed the floor testified that at the time of the accident he had completed washing the floor and was applying the wax in sections of four or five feet square; that the liquid wax

takes at least ten minutes to dry; that he saw plaintiff about ten minutes past six coming, not from the elevators as she testified but from the showroom when he was near the elevators; that she was alone and not accompanied as she claimed by another person; that he directed her to a portion of the floor on which the wax had not been applied, asked her if she wished to go up or down, pushed the down elevator button for her and when he turned around found she had fallen on a portion of the floor on which he had asked her not to step.

It should be clear in view of all the facts and circumstances and particularly in view of the testimony of the person who claimed to have accompanied plaintiff, that the question of plaintiff's contributory negligence was a very important aspect of the case. On this issue it was for the jury to say whether the claimed slippery condition of the floor and the fact that it was being presently oiled and waxed was so obvious and discernible that an ordinarily careful and prudent person would immediately have observed it, there being no claim of lack of proper light, and have taken care for her own safety commensurate with the known conditions that would have avoided the accident.

Washing and waxing a floor is not in and of itself inherently dangerous, though in both operations parts of the floor during the actual process are necessarily made temporarily wet and slippery. Defendant Kemp had the right to hire the cleaning company to wax the lobby floor in the usual, proper and customary way, and no negligence could be predicated against either defendant merely from the fact that while the floor under Kemp's orders was being waxed by the cleaning company plaintiff slipped and fell. (*Curtiss* v. *Lehigh Valley R. R. Co.*, 233 N. Y. 554, revg. on the dissenting opinion of KELLOGG, J., in 194 App. Div. 931; *Kipp* v. *Woolworth & Co.*, 150 id. 283, 285; *Abbott* v. *Richmond County Country Club*, 211 id. 231, 233; *Mona* v. *Erion*, 223 id. 526, 528.) What constituted due care, however, on defendants' part was also an issue of fact for the jury to be determined on all the facts and surrounding circumstances the jury found from the evidence to exist at the time and place of the accident.

Defendant Kemp having assumed control over the hallway for the purpose of waxing the floor, was in a position analogous to an owner of premises who reserves control of the halls to which it invites persons to come, and while not an insurer for the safety of such invitees, was, nevertheless, under a duty to exercise reasonable care to keep the floor of the lobby in a reasonably safe condition for access and egress to persons lawfully on the premises and free from fault, and such duty could not be discharged merely by delegat-

ing the work to an independent contractor. (*Sciolaro* v. *Asch*, 198 N. Y. 77, 82; *Russo* v. *Watson*, 249 App. Div. 782; *O'Rourke* v. *Feist*, 42 id. 136, 138.) Reasonable care in each case depends upon the degree of danger reasonably to be apprehended. Here the allegedly dangerous condition was not produced by the elements or third parties but by one hired by Kemp and ordered to do the work at the time Kemp knew plaintiff was invited into the lobby — at least so plaintiffs claimed.

Assuming the jury believed plaintiff's story that she was invited to come to the lobby when the floor directly in front of the elevators and adjacent thereto had been made slippery, oily and greasy, that such condition was not readily discernible to one stepping from the elevator in the exercise of ordinary care, and that it also was not obvious to such a person that the lobby was presently being oiled and waxed as the worker was over in the remote end of the hallway, it was for the jury to say whether under such circumstances in the exercise of reasonable care Kemp should have seen to it that some form of notice or warning was given to plaintiff and if none was given the jury could find Kemp guilty of negligence.

With regard to the cleaning company, if the jury found from the evidence that in the exercise of ordinary care the cleaning company should have anticipated that persons having the right to use the premises might at the time be expected to step from the elevators, and if the jury accepted plaintiff's story with regard to the other circumstances above outlined, it was also for the jury to say whether in the exercise of reasonable care the cleaning company should have posted or given some form of notice or warning to persons stepping from the elevator into the lobby while it was oily and wet, and if none was in fact given the jury could find the cleaning company also guilty of negligence.

The trial court's failure to submit to the jury the issues of notice or warning as above defined was error.

It was also error for the trial court to refuse to submit the issues between the two defendants to the jury. While no formal contract of indemnity was proved, yet the liability which results from the mere omission of a legal duty imposed by law is to be distinguished from that which results from personal participation in an affirmative act of negligence. (*Scott* v. *Curtis*, 195 N. Y. 424, 428; *Dunn* v. *Uvalde Asphalt Paving Co.*, 175 id. 214, 217; *Phœnix Bridge Co.* v. *Creem*, 102 App. Div. 354, 356; *Iroquois Gas Corporation* v. *International R. Co.*, 240 id. 432; *Birchall* v. *Clemons Realty Co., Inc.*, 241 id. 286.) These issues in the case at bar presented issues of fact for the jury and should not have been disposed of by the court and of course should not have been disposed of after the jury had been discharged.

Plaintiff after the accident claimed to have been treated by several doctors in Washington, D. C., who were not called as witnesses nor their depositions taken nor any explanation offered for the failure to call them or take the depositions. The court committed prejudicial error in charging over the defendants' objection and exception that defendants as well as the plaintiff had the right to take the depositions of these Washington doctors and this error was not cured in the subsequent charge as made. In the light of what happened, the court's refusal to charge at defendants' specific request that the defendants had no right to take the depositions was material error (*Woernley* v. *Electromatic Typewriters, Inc.*, 271 N. Y. 228), for if plaintiff did not have a dislocated coccyx as claimed her injuries were slight.

Plaintiff's medical testimony with regard to treatment adduced through her own brother, a doctor, was unsatisfactory and it is difficult to avoid the inference that the claimed injuries were exaggerated greatly. Plaintiff's counsel, over objection, also offered evidence regarding a number of material injuries specifically different from those specified in the bill of particulars and commented thereon in summation. These claims were clearly outside the pleadings; no testimony whatever should have been permitted regarding them; and defendants' motion to strike out testimony thereon should have been granted. These prejudicial errors were not properly corrected by a later charge purporting generally to limit damages only to what was claimed in the bill of particulars.

The judgment in plaintiffs' favor should be reversed and a new trial ordered, with costs to the appellants to abide the event. In view of our disposition of the appeals relating to the judgment, the order of May 23, 1938, appealed from, granting judgment over on certain conditions, is now academic and the appeal therefrom should be dismissed.

MARTIN, P. J., O'MALLEY, GLENNON and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event. Appeal from order dismissed.