178 So.2d 596 (1965)
Max MODLIN, husband and surviving spouse of Celia Modlin, Deceased, Appellant,
v.
WASHINGTON AVENUE FOOD CENTER, INC., a Florida corporation, Robert Rothlein and the City of Miami Beach, a municipal corporation, Appellees.
Nos. 64-917, 64-918.
District Court of Appeal of Florida. Third District.
September 28, 1965.
Rehearing denied October 18, 1965.
*597 Nichols, Gaither, Beckham, Colson & Spence, Miami, for appellant.
Pyszka, Kessler, McMath & Adams, Miami, for Washington Avenue Food.
Michael H. Salmon, Miami Beach, for Robert Rothlein.
Paul P. Meltzer and Murray Goldman, Miami, for City of Miami Beach.
Before HENDRY, C.J., and TILLMAN PEARSON and CARROLL, JJ.
TILLMAN PEARSON, Judge.
Celia Modlin was shopping at the Washington Avenue Food Center on Miami Beach. While she was in the store, half of an overhead mezzanine, which was used as storage area, collapsed upon her. Mrs. Modlin was crushed to death. Max Modlin, Mrs. Modlin's husband, sued the Washington Avenue Food Center, Robert Rothlein, and the City of Miami Beach to recover damages for her wrongful death. The amended complaint charged that Rothlein had improperly constructed the balcony area, that the City of Miami Beach building inspector had improperly inspected it, and that the store had negligently failed to properly maintain its premises. On the basis of the pleadings and depositions, separate summary judgments were entered in favor of the store owner, Washington Avenue Food Center, and the City of Miami Beach. The complaint against the contractor, Rothlein, was left for the trial. The plaintiff took separate appeals from the summary judgments, and the appeals have *598 been consolidated here. We affirm the summary judgment for the defendant, City, and reverse the summary judgment for the defendant, store owner.

FACTS
Approximately five years before the collapse of the balcony, the owner of the food store had contracted with Robert Rothlein, a licensed building contractor, to construct the mezzanine storage area in the then existing store building. The owner had plans drawn by an architect and also engaged an engineering firm for the structural design of the mezzanine. Pursuant to these plans, the City of Miami Beach issued a building permit for the construction of the mezzanine. Thereafter, the work was performed and the mezzanine was completed. Records of the City of Miami Beach show that a final inspection of the construction work was made by one of the City's inspectors, Eugene Cox.
Subsequent to the collapse, it was determined that some of the columns supporting the mezzanine had not been properly attached to the steel I-beams which ran the length of the mezzanine. The plans provided for each column to be connected with the beam by six half-inch bolts and two 3/8ths inch bolts. However, only the two 3/8ths inch bolts were actually installed to support each beam. It was also determined that the mezzanine collapsed because the 3/8ths inch bolts failed to adequately support the load. It has not been suggested that the actual load was in excess of the design strength nor was the correctness of the design questioned by the parties.
There is no record to indicate that the City's inspector either did or did not make a framing inspection of the connections between the beams and the columns after they were erected, although a framing inspection was a normal part of the inspector's duties. Cox's version of what actually occurred could not be obtained because he died prior to the taking of depositions in this cause.
In the completed stage of the work, the columns and beams were covered by plaster and tile from below and by wood flooring from above, thereby precluding a visual inspection of the joints without tearing away some of the finished work.

THE SUMMARY JUDGMENT FOR THE STORE OWNER
A review of the record convinces us that the only basis upon which the trial judge could have found that the defendant, Washington Avenue Food Center, Inc., was entitled to a summary judgment was a holding that, under the facts outlined above, the store owner could not be held liable to the plaintiff. The appellee does not suggest any other basis for the judgment, and the order entered by the trial judge indicated that basis for his holding. The order appealed is in part as follows:
"THIS CAUSE came on to be heard on the Motion for Summary Judgment of the Defendant WASHINGTON AVENUE FOOD CENTER, INC.
"During the course of the argument on said Motion, counsel for the Plaintiff orally moved the Court to be permitted to amend the Complaint to allege therein that at all times material to the action the Defendant ROBERT ROTHLEIN was an agent of the Defendant WASHINGTON AVENUE FOOD CENTER, INC., and was at all times acting within the course and scope of his agency. This Motion was granted.
"Notwithstanding said amendment to the Complaint and in consideration of all matters before me and after hearing argument of counsel and being otherwise fully advised in the premises, it is
"ORDERED AND ADJUDGED that there is no genuine issue as to any material fact therein and accordingly the Motion for Summary Judgment filed by this Defendant be and the *599 same is hereby granted and it is further. * * *"
The appellant urges three separate reasons why the conclusion of the trial judge is incorrect. They are:
(1) The store is vicariously liable to its business invitees, like Mrs. Modlin, for the alleged negligence of its contractor, Rothlein;
(2) The unrebutted inference of negligence arising from the doctrine of res ipsa loquitur presented a jury issue on the store's negligence; and
(3) The store did not show that it had discharged its alleged independent duty of properly inspecting its premises so as to safeguard its invitees.
The appellee, store owner, upon the other hand, urges:
(1) The rule in Florida is that an employer is not liable to a third party for the negligent or defective performance of an independent contractor unless the employer controls or directs the work, the work is inherently dangerous, or the employer has knowledge or has been placed on inquiry respecting the defect.
(2) An inference of negligence cannot rise under the doctrine of res ipsa loquitur because the evidence is clear that the defendant, store owner, had no means to observe the structural weakness.
(3) The record, without conflict of facts, shows that the defendant, store owner, exercised all the care that could reasonably be expected.
The parties agree that Mrs. Modlin was a business invitee of the food market and that she was shopping on its premises at the time of the accident. As a matter of law, it is established that those who impliedly invite others upon their premises for purposes of lawful business are required to have the premises in a reasonably safe and suitable condition for the purposes of the particular business. J.G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45 (1912). Economy Cash and Carry Cleaners, Inc. v. Gitlin, 146 Fla. 242, 1 So.2d 191 (1941). If a person has a duty imposed by the law, that duty can ordinarily be discharged by an exercise of reasonable care.[1] The difficulty is not in ascertaining the language describing the duty; the difficulty is in determining whether the meaning of the rule extends to the acts of a construction instrumentality who is an independent contractor.
The Restatement of the Law of Torts (Second) § 422 (1965), under the heading "Work on Buildings and Other Structures on Land, sets forth the following principle:
"A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
(a) while the possessor has retained possession of the land during the progress of the work, or

*600 (b) after he has resumed possession of the land upon its completion."
We are persuaded to the opinion expressed in Frear v. Manchester Traction, Light & Power Co., 83 N.H. 64, 139 A. 86, 61 A.L.R. 1280 (1927), where it is pointed out that when the proprietor of a public place holds out an invitation to the public for the use of his premises, he acts as the sponsor of an enterprise and has a duty to keep the place reasonably safe. This duty is non-delegable. Corrigan v. Elsinger, 81 Minn. 42, 83 N.W. 492 (1900); Great American Indemnity Co. v. Deatherage, 175 Okla. 28, 52 P.2d 827 (1936); Cannon v. S.S. Kresge Co., 233 Mo. App. 173, 116 S.W.2d 559 (1938); Eisenberg v. Irving Kemp, Inc., 256 App.Div. 698, 11 N.Y.S.2d 449 (1939); Brown v. George Pepperdine Foundation, 23 Cal.2d 256, 143 P.2d 929 (1943).
The appellee relies upon Nutt v. James City, Inc., Fla.App. 1964, 162 So.2d 700, for a contrary holding by this Court. In that case, we affirmed a directed verdict for the defendant, store owner, against the plaintiff who claimed negligence of the store owner in maintaining its premises. The evidence showed that an air conditioning duct fell upon the plaintiff because it was improperly attached to the ceiling or wall. In affirming the trial court, we held that any inference of negligence, by virtue of the doctrine of res ipsa loquitur, was resolved by the uncontradicted testimony of the owner's agent that he had inspected the duct two months prior to the occurrence and found it in sound condition. We believe that the holding in Nutt v. James City, Inc. may be distinguished upon the ground that the evidence there affirmatively showed an inspection. Insofar as the holding herein is contrary to that in the James case, we recede from the opinion expressed in the James case and now hold that an owner of a store or other public place, who impliedly invites the public into that place for the transaction of business, assumes a non-delegable duty to have those premises in a reasonably safe condition.
Of course, we delude ourselves by talking about reasonable care. Negligence has nothing to do with the question of whether or not a store owner ought to be liable to a customer for the collapse of a store building. The decision is based upon a policy consideration. Having assumed the responsibility to provide a safe place by inviting the public, the proprietor cannot, after an injury resulting from a structural deficiency, be permitted to shift the responsibility to someone more remote to the customer. Cf., City of Jacksonville v. Drew, 19 Fla. 106 (1882) [city's duty to maintain streets]; Putnam Lumber Co. v. Berry, 146 Fla. 595, 2 So.2d 133 (1941) [master's duty to provide safe place to work]; Goldin v. Lipkind, Fla. 1950, 49 So.2d 539, 27 A.L.R.2d 816 [innkeeper's duty to maintain safe premises]; Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832 [owner's liability for operation of an automobile]; Easton v. Weir, Fla.App. 1960, 125 So.2d 115 [landlord's duty to make repairs in safe manner]; Mastrandrea v. J. Mann, Inc., Fla.App. 1961, 128 So.2d 146 [statutory duty imposed by safety regulation].
We therefore hold that the store owner may be liable for the acts of the builder, even though the builder was an independent contractor. It was reversible error for the trial court to rule that as a matter of law the store owner could not be liable in this case.

THE SUMMARY JUDGMENT FOR THE CITY
The appellant's point urging that the court erred in entering the summary judgment for the City of Miami Beach is likewise based upon the assumption that the trial judge found that, under the facts outlined, the defendant could not be liable. The trial judge set forth in his order an assumption which aids us in reaching the crucial question on this appeal. The order appealed is in part as follows:
"THIS CAUSE came on before me upon the Motion for Summary Judgment *601 filed by the Defendant, CITY OF MIAMI BEACH, in this cause and the Court having heard argument of counsel and having carefully considered the depositions, and pleadings in this cause, and the Court having assumed for the sake of this motion, that there were sufficient facts upon which a jury could find that the City Inspector was negligent in his inspection, but the Court nevertheless having concluded that upon the record herein the Defendant, CITY OF MIAMI BEACH, would not be liable to the Plaintiff in the premises, and the Court having fully been advised herein, it is
"ORDERED and ADJUDGED that the Motion for Summary Judgment filed by this Defendant be and the same is hereby granted, it is further * * *."
Appellant's claim for compensation from the City of Miami Beach rests upon the fact that the City of Miami Beach undertook to inspect and approve the construction of the mezzanine storage area during the progress of the work. There is sufficient evidence for the purpose of defending the motion for summary judgment that the City's building inspector was negligent in making the so-called "framing inspection." From these premises, it is urged that if this inspection had been properly made it would have revealed that the bolts connecting the columns and the I-beam were not in place. It is then urged that this failure to properly inspect eventually caused Mrs. Modlin's death, and that since the City failed to properly inspect, the City must be liable. While the above theory of liability has not been proved as to all of the facts alleged, it is clear that the trial judge was correct in assuming for the purpose of summary judgment that a jury could find that the City's inspector was negligent in his inspection.
The appellant contends that the decision in Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, has established in this jurisdiction that a municipality is liable in tort upon the same basis and upon the same circumstances as any private corporation. There is no doubt but that a private corporation is liable when it undertakes a duty of inspection, negligently performs that inspection, and the negligent performance causes injury to another. Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932); Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964) [applying Florida law].
It is true, as the appellant has pointed out, that Hargrove v. Town of Cocoa Beach, supra, has brought about a revolution in the law of municipal liability, but we do not think that it can be assumed, as the appellant urges, that the liability of a municipal corporation in Florida is in all respects that of a private corporation. The Supreme Court of Florida has specifically preserved municipal immunity for the exercise of legislative, judicial, quasi-legislative and quasi-judicial functions.[2]
In Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049 (1938), the Court held that a city could not be liable to an individual for damages allegedly caused by the enforcement of an unconstitutional ordinance. This case is specifically mentioned in Hargrove as an example of one which would not impose liability because it is within one of the exempted classifications.
The second case specifically mentioned in Hargrove, as an example of one which would not impose liability, is Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R. *602 2d 691. In that case the plaintiff contended that the City was liable because it acted in an unlawful manner in the exercise of its power to issue building permits. She claimed damages because the City refused to grant her a building permit. The Court reasoned that the City, in the exercise of its powers and duties in respect to the enactment and enforcement of police regulations, was entitled to immunity from suit.
The Supreme Court of Florida has recently had occasion to re-examine the scope of the Hargrove decision. In City of Miami v. Simpson, Fla. 1965, 172 So.2d 435, the Court held that a municipality may be liable for intentional torts committed by employees acting within the scope of their employment. And in Fisher v. City of Miami, Fla. 1965, 172 So.2d 455, the Court held that municipalities are not liable for punitive damages when sued for a wrong committed by an employee. In so holding, the Court, at page 456, stated:
"In summary, Hargrove took cognizance of the injustices which had been produced by an antiquated concept of immunity. It proceeded to right those wrongs by clarifying the basic element of liability. It did so in the posture of allowing compensation for wrongs done. We think the results have been both salient and salutary. Despite all of this, we did not go beyond compensation as the ultimate to be achieved from the liability there imposed."
The question then becomes whether or not a negligent failure to inspect or a negligent inspection by a city, pursuant to its building code, is a wrong to persons subsequently injured by defective construction.
Every city performs a variety of services for its citizens. The enactment of a building code designed to require greater safety in the buildings constructed is one of these services. The enforcement of the building code by the inspection of buildings is another service to the citizens of the city. It is a service similar to the enforcement of the traffic ordinances because each is designed to require greater safety.
In Hewitt v. Venable, Fla.App. 1959, 109 So.2d 185, a city was held to be amenable to suit for the alleged negligence of its agent in the manual operation of a traffic control signal at a railroad crossing. But a city is not liable for damages claimed to have been caused by the city's failure to place a policeman or a traffic control device at a particular intersection because such decisions are a matter of judgment by city officials. Raven v. Coats, Fla.App. 1961, 125 So.2d 770.
The State of New York has legislatively waived its immunity for the torts of State officers and employees. This loss of immunity by the State has been held to extend to all its subdivisions. In considering the possibility of municipal liability for the alleged negligence of a building inspector in issuing a permit, it was held that such liability could not exist under New York law because the act required the exercise of judgment of a quasi-judicial nature. Lockwood v. Village of Buchanan, 18 Misc.2d 862, 182 N.Y.S.2d 754 (1959). The same result was reached in the case of an alleged error in the issuance of a certificate of occupancy, Meadows v. Village of Mineola, 190 Misc. 815, 72 N.Y.S.2d 368 (1947). If we assume that the same reasoning would produce the same result in Florida, we may reach the conclusion that the act of issuing a building permit or a certificate of occupancy would not carry with it liability to third persons who might subsequently be injured by the collapse of a building. We have already noted that in Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691, a city was held not liable for its employee's unlawful refusal to grant a building permit.
In Steinhardt v. Town of North Bay Village, Fla.App. 1961, 132 So.2d 764, a city was held not liable to a property owner whose residence burned because the city's *603 fireman failed to keep a truck's water tank filled with water.[3]
The enactment of regulations requiring buildings of a reasonably safe construction is certainly an exercise of the municipality's legislative powers. As indicated by the Hargrove decision, the enforcement of these regulations is an exercise of the legislative, judicial, quasi-legislative, or quasi-judicial function. We conclude that a failure to inspect, or a negligent inspection, is part of the enforcement process.
The faulty judgment of the building inspector in failing to make an inspection, or in negligently making an inspection, which would have revealed the defect (and presumably resulted in its repair) did not create a right of action in one subsequently injured because of the defect. A contrary holding would seem to make the city a guarantor of the safety of each person who uses a building constructed under that city's construction ordinances. Such public responsibility for the safety of the individual seems to go beyond the broadest boundaries yet fixed for governmental liability to the individual.
We therefore hold that the trial judge properly granted the summary judgment for the defendant, City of Miami Beach.
The summary judgment for the defendant, City of Miami Beach, is affirmed and the summary judgment for the defendant, Washington Avenue Food Center, Inc., is reversed.
Affirmed in part and reversed in part.
HENDRY, Chief Judge (concurring specially).
I concur in the opinion and judgment of the majority as to appellee-City of Miami Beach but, I concur only in the result reached as to appellee-Washington Avenue Food Center, Inc.
NOTES
[1] "Under principles of the common law in force in this state, where A., or one for whose act or omission A. is in law responsible, negligently or without the exercise of due care does not omits to do an act that proximately causes or permits the operation of well-known forces of nature, such as physical gravitation, to injure B., as to whom A. or the person acting for him owed a duty to exercise due care in the premises, and such injury would not have occurred but for the negligent act or omission of A. or his representative, A. may be liable in compensatory damages for such substantial injuries that proximately result in fact from his negligence as reasonably should have been anticipated or expected as a natural and probable consequence of the negligent act or omission, provided B. did not negligently contribute proximately to his own injury." Southern Express Co. v. Williamson, 66 Fla. 286, 63 So. 433, L.R.A. 1916C, 1208 (1913).
[2] "We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54 [37 A.L.R.2d 691]." Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 133.
[3] In this connection, Justice Drew in his dissent to the denial of certiorari in Steinhardt stated: "I agree that that portion of the complaint in this cause asserting that the negligence of the municipality consisting of employing untrained and incompetent firemen or, as the district court described it, `failure to properly provide a city service' does not constitute actionable negligence under the Hargrove case. * * * The complaint, however, also alleges negligence of the municipality arising out of the acts of its employees in `dispatching a fire truck improperly equipped' as a result of which plaintiffs' house and personal property were totally destroyed. Because of my inability to distinguish the negligence of the city alleged in that portion of the complaint * * * from the negligence of the city alleged in the Hargrove case * * * I am forced to the conclusion that to that extent the decision of the district court is in direct conflict with the decision in that case." Steinhardt v. Town of North Bay Village, Fla. 1962, 141 So.2d 737.