Marie L. **HILL**, Appellant,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY**, Appellee.

No. 25767.

United States Court of Appeals, Fifth Circuit.

June 2, 1970.

Rehearing Denied and Rehearing En Banc Denied July 20, 1970.

---

Jack F. Wayman, Mark Hulsey, Jr., Nathan Bedell, Jacksonville, Fla., for appellant.

Noah H. Jenerette, Jr., Jacksonville, Fla., for appellee.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

This is one of approximately 50 cases growing out of a fire at the Roosevelt Hotel in Jacksonville, Florida in 1963 and filed in the District Court for the Middle District of Florida. The District Court

has stayed proceedings in the companion cases pending the outcome of this appeal.

Appellant and her husband were guests in the hotel. Her claim against USF&G is for damages for personal injury to herself and for the wrongful death of her husband, both suffered in the fire. USF&G was the hotel's public liability, fire and workmen's compensation insurer. The basis of appellant's claim is alleged negligent performance by USF&G of an undertaking by it to carry out what are termed safety engineering inspections of the hotel. The principal issue is whether USF&G owed a legal duty to the hotel's guests.

The District Court granted USF&G's motion to dismiss appellant's claim as stated in the Uniform Amended Complaint for failure to state a claim upon which relief could be granted, and granted leave to amend.[1] Appellant filed a Second Uniform Amended Complaint, and it was dismissed for the same reasons assigned for the first dismissal.[2] The appellant elected not to plead further, and the court entered a judgment of dismissal with prejudice.

We conclude that the District Court erred in dismissing the Uniform Amended Complaint, and the Second Uniform Amended Complaint, and we reverse.[3]

### 1. History of the proceedings.

This action and others were filed originally in Florida state court, charging negligence against individual owners of the hotel, the hotel company (the operating lessee) and USF&G. The state court denied USF&G's motion to dismiss the Uniform Amended Complaint, holding that it stated a cause of action for negligent violation of duties as defined in the decision of the Supreme Court of Illinois in Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (Ill.1964) and the Florida case of Modlin v. Washington Avenue Food Center, 178 So.2d 596 (Fla. Ct.App.1965).[4] Nelson, though decided by the courts of Illinois, applied Florida law. Prior to trial, claims against the individual owners and the operating lessee were settled, and those parties were dismissed from the case. USF&G then removed to federal court on diversity grounds.

After removal USF&G moved the federal District Court for rehearing of its motion to dismiss, which had been denied in state court. The District Court granted rehearing and granted the motion, stating that it was following the opinion of the Appellate Court of Illinois in Nelson v. Union Wire Rope Corp., 39 Ill. App.2d 73, 187 N.E.2d 425 (1963), which it thought the Supreme Court of Florida would follow, rather than the reversing opinion of the Supreme Court of Illinois, which the Florida trial court had followed.

### 2. The power of the District Court to rehear the motion to dismiss.

In the beginning we dispose of the contention of appellant that the federal court could not rehear the motion to dismiss the Uniform Amended Complaint and, if it did so, could not reach a result opposite to that of the state court. Appellant's argument is a sort of catch-all amalgam of what the federal court is *Erie*-bound to do, what as a matter of policy it should do, law of the case, and the evils of forum shopping.

A final decision of a state trial court is not binding on the federal courts as a final expression of the state law, King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948). In this

---

I. 272 F.Supp. 569 (M.D.Fla.1967.)

2. This order is not officially reported.

3. The parties have briefed and argued the sufficiency of both complaints. No party has questioned that both dismissal orders are before us for review, and we raise

no question. See 6 Moore, Federal Practice § 54.12 [1] at 116, and cases there cited.

4. Subsequently *Modlin* was affirmed by the Supreme Court of Florida, *sub nom.* Modlin v. City of Miami Beach, 201 So.2d 70 (1967).

instance the decision of the state court does not have the imprimatur of finality, but in lieu it has the persuasive force of having been entered in the very case and on precisely the same issues, and it has the additional persuasiveness of the fact that the state judge, in seeking to divine what was the law of Florida, relied upon the opinion of the highest court of Illinois, while the federal judge, engaged in the same search, chose to follow the reversed opinion of the intermediate appellate court of Illinois. The state judge had power to reexamine his own order on motion to dismiss until such time as final judgment was entered, and the federal judge would have had power to do the same with an order of his own. The power to reexamine is not lost by the transfer from state to federal system.

### 3. The Uniform Amended Complaint

The Uniform Amended Complaint contains these allegations as the basis for the claim that USF&G had a duty to hotel guests which it breached:

9. From the time the owners acquired ownership of the hotel until the time of the fire, the defendant United States Fidelity & Guaranty Company (hereinafter referred to as the "insurance company") issued and carried various public liability, fire, and workmen's compensation insurance policies covering said premises and the operation of said hotel and made periodic safety engineering inspections of the hotel premises to detect conditions hazardous to persons occupying and using the hotel premises. The insurance company made reports of such inspections to the hotel company together with recommendations for the elimination of any such hazardous conditions, and the owners and hotel company complied with such recommendations and relied upon the insurance company to inspect the hotel premises and to detect and report conditions hazardous to persons occupying and us-

ing the hotel premises. It became and was the duty of the insurance company to exercise reasonable care in making such inspections and although the insurance company, in the performance of its safety engineering inspections knew or should have known of the conditions alleged in paragraphs 4 and 5, above, and knew or should have known that such conditions constituted an unreasonable risk of injury from fire and smoke to persons in the hotel and rendered the premises unsafe for the housing of guests as alleged in paragraph 6, above, and should have reported the existence of such hazardous conditions to the hotel company, yet the insurance company carelessly and negligently performed such inspections in failing to detect such conditions and in failing to report to the hotel company that such conditions rendered the hotel unsafe for housing guests.

■ We conclude that this stated, under Florida law, a claim on which relief could be granted. A point of entry for discussion is § 324A of the Restatement of Torts, Second (1965):

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform[5] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

---

5. The reporter for this edition of the Restatement, by a letter to counsel furnished to this court, has verified that the word "protect" which appears at this point is a typographical error and should read "perform."

Comment e. to that subsection provides:

e. Reliance. The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. This is true whether or not the negligence of the actor has created any new risk or increased an existing one. Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.

Section 324A subjects one to liability whether his undertaking be gratuitous or for compensation. The District Court characterized the Uniform Amended Complaint as alleging a purely gratuitous undertaking by USF&G and the parties take the same approach. We have some question whether the language of paragraph 9, quoted above, confines the role of USF&G to that of a mere volunteer. But, as a practical matter, we accept that characterization. The Second Uniform Amended Complaint positively alleges that USF&G's undertaking is for compensation.

The most full analysis of the Florida law is in the two *Nelson* opinions of the Illinois courts. In *Nelson* actions were brought in Illinois for seven deaths and injuries to eleven other persons occurring in the fall of an elevator-type hoist in the contruction of Duval County courthouse at Jacksonville, Florida. Suits were brought in Illinois against American Mutual, which was the insurer carrying public liability and workmen's compensation insurance for the general contractor, on the basis of its undertaking to supply safety engineering service (and against other defendants on other theories). Judgments were entered against American Mutual.

On appeal the Appellate Court of Illinois held that the policies issued by American Mutual gave it the right to inspect the premises and equipment of the general contractor (Auchter) but did not impose upon it any duty to do so, and that the theory of plaintiffs' case was negligent performance by American Mutual of a gratuitous undertaking to perform safety engineering services. The Appellate Court reversed on the basis of its conclusion that American Mutual had not undertaken inspection of the hoist and cable as part of its gratuitous safety engineering services, but, alternatively, even if it had entered into such an undertaking, no one, neither Auchter nor the plaintiffs, had relied upon the insurer to inspect the hoist or cable which failed. 187 N.E.2d at 449, 453.[6]

The Supreme Court of Illinois reversed the Appellate Court, holding that it was not essential to prove reliance, but that in any event the proof had adequately shown reliance by Auchter:

Plaintiffs have argued that if reliance by Auchter is essential to defendant's liability to them, the proof is such that the jury could find with reason that Auchter had in fact relied upon defendant's safety inspections. Without making an extended analysis of the pertinent evidence, we believe that there is merit in this contention. However, for the reasons already stated, it is enough to say that reliance, either by plaintiffs or Auchter, was not an absolute essential to the liability of the defendant in this case.

199 N.E.2d at 780. The dissenters in the Supreme Court thought there had been no proof of reliance of any type, and that there had to be proof, but they recognized that liability would arise upon "proof of reliance, or of what may be the same thing, proof that the defendant caused the contractor to refrain from performing its duty to inspect." 199 N.E.2d at

6. While its opinion is not entirely clear on the point, the Appellate Court appeared to indicate that reliance by the insured would have been sufficient, by its quotation, as an analogy, of § 354 of the Restatement of Agency (Second), which, in referring to liability of an agent who undertakes to act, refers to reliance by the principal or by a third party. 187 N.E.2d at 449–450.

796. To the same effect, see 199 N.E. 2d at 797.

In the instant case the appellant alleged reliance by the owners and the hotel company. This complies with the standards of the Restatement, of the Appellate Court of Illinois, of the dissenters in the Supreme Court of Illinois, and is a heavier burden than required by the majority in the Supreme Court. The District Judge erred in requiring allegation of reliance by the plaintiff as a condition of statement of a claim upon which relief could be granted.

What the Illinois courts think is the Florida law is not binding on the Florida courts or conclusive for us in our *Erie* search for the Florida law. But we are of the view that the principles common to both *Nelson* opinions, as described above, correctly articulated the law of Florida governing the situation in which there has been reliance by either the recipient of the services undertaken by the insurer or a third person for whose protection the services should be recognized as necessary. Because in the instant case reliance by the hotel company is alleged we are not called upon to reach the issue of whether the Illinois Supreme Court was correct in its view that under Florida law there may be liability without reliance.[7]

*Nelson* has been cited with approval in a dictum in Modlin v. Washington Avenue Food Center, 178 So.2d 596 (Fla. Ct.App.1965), aff'd sub nom. Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967):

> There is no doubt but that a private corporation is liable when it undertakes a duty of inspection, negligently performs that inspection, and the negligent performance causes injury to another. Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932); Nelson v.

Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964) [applying Florida law].
178 So.2d 601.[8]

*Nelson* was followed in Gallichio v. Corporate Group Service, Inc., 227 So.2d 519 (Fla.Ct.App.1969), in which an injured longshoreman sued an agency which apparently had contracted with his employer to take over safety inspections, alleging negligent performance of the contractual duty. The court held the complaint stated a cause of action under Florida's third party beneficiary rules. The court rejected the contention that privity was required unless the defendant had knowledge that the plaintiff would rely, saying:

> In the present case the allegations of the complaint lead to the inescapable inference that all drydock workers (including the appellant) of the employer with whom the appellee contracted might be harmed if the appellee negligently performed its contractual duty to make safety inspections. Privity is not required in such circumstances. See Nelson v. Union Wire Rope Corporation, 31 Ill.2d 69, 199 N.E.2d 769, 779–780 (1964); cf. Morse v. Hendry Corp., Fla.App.1967, 200 So.2d 816. This conclusion is reinforced by the reasoning of Justice Terrell in Matthews v. Lawnlite Company, Fla.1956, 88 So.2d 299. Cf. Manheim v. Ford Motor Company, Fla.1967, 201 So.2d 440. We hold that one who may foreseeably be injured by the negligent performance of a contractual duty has the right to maintain an action against the allegedly negligent performer even though he is not in privity with that performer.

United States v. Gavagan, 280 F.2d 319 (5th Cir.) cert. denied, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365 (1961), is a

---

7. Reed v. Black Caesar's Forge Gourmet Restaurant, 165 So.2d 787 (Fla.Ct.App. 1964), affirmed the dismissal of a gratuitous undertaking case for want of allegations of reliance. See also American Box & Lumber Co. v. Chandler, 102 Fla. 907, 138 So. 29 (1931).

8. In *Modlin* the inspector was a government officer and liability was asserted against the city. The decisions in both Florida courts rest on municipal immunity to a claim of this nature.

maritime tort case in which this court held the United States liable for consequences of negligent failure to rescue the crew of a disabled fishing vessel after the Coast Guard undertook the rescue effort, and the friends and families ashore, in reliance on the government's effort, had withheld search and rescue efforts of their own. The reliance was not that of the fishermen on the boat but of others who, like the hotel company, might have taken action to safeguard those who were in danger (or might be placed in danger) but for the undertaking by the defendant to act.

The responsibility of a contracting party to a third person with whom he has made no contract has presented the courts with perplexing difficulty for a long time. The dicta of Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842), have died hard. The appellee takes a stand on the crumbling citadel of privity. That concept, as a limitation on the tort liability of the contracting party to the third person with whom he has no contract, "has now generally been thrown into judicial discard." Seavey, Reliance on Gratuitous Promises, 64 Harv.L.Rev. 913, 917 (1951). Florida, like all, or almost all,[9] American jurisdictions has discarded privity in claims against the manufacturer of chattels by the third party who has purchased from a retailer. Matthews v. Lawnlite Company, 88 So.2d 299 (Fla.1956), warmly embraces the "more humane or reasonable trend of decisions" exemplifying "a doctrine more in line with reason and justice." 88 So.2d at 300.[10]

"In dealing with the liability to third persons of other contracting parties, such as those who undertake to furnish labor or services, the law has not kept pace with the developments as to suppliers of chattels * * *. The fetish of 'privity of contract' has remained more of an obstacle; and while 'the assault upon the citadel of privity is proceeding these days apace,' the fear of burdening the defendants with a crushing responsibility, which has largely disappeared from the field of sales, still tends to lead many courts to deny liability in cases which fall behind the general progress." Prosser, supra, § 99 at 688–89. Florida has not lagged behind. It is one of a handful of jurisdictions that have laid aside privity as a bar to recovery in the typical waterworks case, in which a waterworks company has undertaken to supply water to fire hydrants and as a consequence of its failure plaintiff's house has been destroyed by fire. Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 249, 49 So. 556 (1909). In Gallichio v. Corporate Service, Inc., supra, the Florida Court of Appeals rejected privity where an identifiable group were exposed to risk of harm by defendant's negligent performance of a contractual duty to make safety inspections.

Investment Corporation of Florida v. Buchman, 208 So.2d 291 (Fla.Ct.App.), cert. discharged, 216 So.2d 748 (Fla. 1968), does not command a result different from that which we reach.[11] It concerned a claim of liability of accountants to third parties for negligent misrepresentation in the form of financial statements on which it was known the claimants would rely.[12] The Florida court held there was no such duty as would give rise to a claim for negligence. Claims based on negligent misrepresentation and resulting in invasion of only a purely economic interest of the third party have had a wholly different judicial history and treatment from those based on actions of the defendant other

---

9. See Prosser, § 96 at 661 (1964 ed.).

10. Also see Bernstein v. Lily-Tulip Cup Corp., 177 So.2d 362 (Fla.Ct.App.), aff'd, 181 So.2d 641 (Fla.1966); Carter v. Livesay Window Co., 73 So.2d 411 (Fla. 1954) (real property).

11. Nor, for the same reasons, does Sickler v. Indian River Abstract & Guaranty Co.,

142 Fla. 528, 195 So. 195 (1940), concerning non-liability of an abstractor to third persons relying on abstracts prepared by him.

12. See Comment Accountants' Liabilities for False and Misleading Financial Statements, 67 Colum.L.Rev. 1437 (1967).

than misrepresentations and resulting in physical harm to the plaintiff's person. Seavey, *supra* at 913, 915; Prosser, *supra,* § 99 at 688–696.

The problem of the persons to whom the defendant may be liable, already difficult in the case of intentional misrepresentation, becomes still more acute where it is merely negligent. The possible liability which might result from the communication of a statement to remote plaintiffs is so great, and may be so far out of proportion to the fault involved, that there is general agreement that a more restricted rule is necessary in the case of economic loss than where there is tangible harm to person or property.

Prosser, *supra,* § 102 at 721.[13] But for one to suffer injury to person or property there must be, in most instances, physical proximity, which operates as a limiting factor on the scope of liability.

The elusive nonfeasance-misfeasance dichotomy troubled the two Illinois courts. It has been described as an "obviously immaterial distinction." Seavey, *supra,* at 916–17. In many circumstances defendant's failure to perform the undertaking at all, described as nonfeasance, has operated as a means to deny recovery, and misfeasance has been employed as a means to permit recovery in cases of negligent performance of the undertaking. Prosser, *supra,* § 99 at 689, 692. The District Judge in the case before us appeared to rely on the Illinois Appellate Court's characterization of the insurer's failures as nonfeasance, a characterization held by the Supreme Court to be erroneous. As the basis for dispensing with necessity of reliance the majority in the Supreme Court relied upon their characterization of the same conduct as misfeasance. All of this turns out to be somewhat of a teapot tempest in our decision, because reliance has been alleged.

Even in what otherwise arguably might be nonfeasance cases liability often has been imposed where the contracting party has entered upon performance so that a duty has, in effect, been assumed by conduct, and the situation is even clearer where the contracting party relies upon performance and as a result a third person is injured. Prosser, *supra,* at 690–91. What is before us is such an "even clearer" case, because there has been alleged entry upon performance by the insurer, reliance by the hotel company, and resultant injury to third persons.

In any event, the slippery misfeasance-nonfeasance distinction is another citadel not sacrosanct in Florida. Waterworks cases are the classic cases for assertion of mere nonfeasance as a shield against liability, but, as pointed out above, Florida is one of the few states that impose liability. In *Woodbury,* supra, the Florida Supreme Court commented: "The liability is for negligence of omission or commission in the performance of the duties imposed by law." 49 So. at 565. More recently the distinction has been brushed aside in the case of the landlord who fails to perform an undertaking to repair.

Under earlier law, the rule was general that the landlord is not liable for an outright failure to repair, but there is now a pronounced trend toward the

---

13. See also 2 Harper and James, Torts, at 1043, n. 24 (1956 ed.) :
"Outside the field of accidental personal injury or property damage, the duty to use due care is often stopped short of persons who may foreseeably be injured by negligence. [citing Ultramares Corp. v. Touche Niven & Co., 255 N.Y. 170, 174 N.E. 441 (1931)].
And see, Restatement of Torts, § 552, Comment a, at 123, referring to liability for negligently supplying information for the guidance of others in their business transactions :
"As in the case of fraudulent misrepresentations the liability is confined to those who are intended to rely upon the information and who rely upon it in a type of transaction in which it is the maker's purpose to influence their conduct. This distinction does not come from the fact that the matter supplied is information rather than a tangible thing. It comes from the fact that it is supplied for guidance in a business transaction and not for guidance in a matter in which the safety of persons, lands or chattels is involved."

view that the landlord may be liable under such circumstances. \* \* \* The modern view has been adopted in the Restatement of Torts, § 357, and we do not hesitate to follow it. It would seem inconsistent to us to hold in this context that the landlord is liable for misfeasance but that he may escape liability by nonfeasance.

Propper v. Kessner, 104 So.2d 1, 2 (Fla. 1958).

We turn to considerations of social utility. The insurer which engages in safety engineering on a hotel building serves the interests of the class of hotel guests, as well as its own interests in underwriting, establishing rates, and minimizing losses, and the interests of the hotel in preventing or minimizing damage to its property and injury or loss to its guests. Insurers who make safety inspections may make substantial and socially desirable contributions to safety and in turn to preservation of life and property. But, on the other hand an insurer may by the manner of conduct of safety inspections, or its representations concerning safety inspections, create serious risk of harm to third persons if the insured relies on what the insurer says or does. If the hotel in reliance on what the insurer undertakes to do lessens or omits its own safety measures and the insurer does not perform with due care what it has undertaken to do, the guests are potential victims.

The argument that insurers should be able to carry out inspection programs without exposure to potentially heavy liability for failing to discover hazards is largely answered in this case, and other cases like it, by the element of reliance. Justice Schaeffer recognized this in his dissent in the Illinois Supreme Court decision in *Nelson*. If reliance is a prerequisite to liability the insurer may substantially protect itself in its safety undertakings, and at the same time protect users of the premises who may be the victims of lack of performance, by making unambiguously clear to the insured either that it can rely thereon or that it must not rely. Whether Florida chooses to impose liability absent reliance is for it to decide in some other case.

### 4. The Second Uniform Amended Complaint

■ This complaint alleges in detail the purposes of USF&G's safety engineering department and the training of its agents to take advantage of its safety engineering service as a means of soliciting insurance business. The plaintiff asserts that the hotel company bought its policies in reliance on prior representations concerning the service, and afterwards relied on the inspections actually made, and relied also by not availing itself of safety engineering service obtainable from others. Plaintiff alleges that part of the premium paid by the hotel company was for safety engineering services.

This complaint was dismissed as insufficient for the same reasons as the Uniform Amended Complaint. *A fortiori*, this was error.

### 5. Proximate Cause

■ The District Judge dismissed both complaints on the basis of absence of legal duty and did not reach proximate cause. Since appellee urges to us that in both complaints allegations of proximate cause are insufficient, and presumably would make that argument again in the District Court, we hold that these contentions are without merit. Mozer v. Semenza, 177 So.2d 880 (Fla.Ct.App. 1965).[14] Romedy v. Johnston, 193 So.2d 487 (Fla.Ct.App.1967), is not authority that proximate cause cannot exist in the case before us. *Romedy* held insufficient a complaint charging wrongful death in the same hotel fire. The decedent was a fireman, who was called upon the premises to fight the fire, inhaled quantities of smoke, and as a result suffered a heart attack and died. Subse-

---

14. *Cf.* Western Hills Bowling Center, Inc. v. Hartford Fire Ins. Co., 412 F.2d 563 (5th Cir. 1969).

quently in Hotel Roosevelt Co. v. Hill, 196 So.2d 233 (Fla.Ct.App.1967), a case arising from the same fire in which both the instant appellant and appellee were parties, the court made plain that it did not intend by the generality of its language in *Romedy,* where decedent was a licensee, to decide the case of a hotel guest, a business invitee.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.